United States District Court
Southern District of Texas
**ENTERED**
January 05, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JEWELL THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00254 |
| | § | |
| PRICSYLLA ANCISO, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CASE

Plaintiff Jewell Thomas, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff asserts claims against Defendants under the Eighth Amendment, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A), and the Rehabilitation Act (RA), 29 U.S.C. § 794. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act.[1] *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

For the reasons set forth below, the undersigned respectfully recommends that: (1) Plaintiff's § 1983 claims for money damages against all **Defendants** in their official capacities be **DISMISSED without prejudice** as barred by the Eleventh Amendment; and

---

[1] Mr. Thomas has accumulated at least 3 strikes for filing frivolous lawsuits as an inmate. *See Thomas v. Sanchez*, No. 2:22-cv-129 (S.D. Tex. Nov. 17, 2022)(order of dismissal assessing strike); *Thomas v. Carter*, No. 2:22-cv-133 (S.D. Tex. Oct. 31, 2022)(order of dismissal assessing strike); *Thomas v. Trevino*, No. 2:22-cv-157 (S.D. Tex. Dec. 15, 2022)(order of dismissal assessing strike). Mr. Thomas is prohibited from bringing any further actions or appeals *in forma pauperis* while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury. *See* 28 U.S.C. § 1915(g). However, this case was filed before Mr. Thomas accumulated three strikes, therefore, the undersigned has conducted traditional PLRA screening.

(2) Plaintiff's Eighth Amendment  and ADA/RA claims against all **Defendants** in their respective individual and official capacities be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).  The undersigned recommends further that the dismissal of this case counts as a "strike" for purposes of 28 U.S.C. § 1915(g).

## I.      JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.     PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas. Plaintiff's allegations in this case arise in connection with his current housing assignment.

In this action, Plaintiff sues the following defendants: (1) Officer Pricsylla Anciso (Anciso); (2) Deputy Warden Juan Nunez (Nunez); (3) Captain Skinner Sturgis (Sturgis); and (4) TDCJ Executive Director Bryan Collier (Collier).  (D.E. 1).  Plaintiff generally claims Defendants violated his Eighth Amendment and ADA/RA rights by neglecting his medical needs in connection with his diabetic condition.  (*Id.* at 8).  Plaintiff seeks monetary relief.  (*Id.*).

As directed by the Court, Plaintiff filed a More Definite Statement in which he explains his claims in more detail.  (D.E. 8).  Plaintiff alleges the following relevant facts in his original complaint (D.E. 1) and More Definite Statement (D.E. 8).

In 2015, Plaintiff was diagnosed with Type II diabetes.  (D.E. 1-2, p. 1).  While in custody at the McConnell Unit, Plaintiff was prescribed the following medications for his diabetes: 1000 mg of Metformin twice daily, Glipizide tablets once daily or more as needed for hyperglycemia, and insulin injections twice daily with more insulin doses per a "sliding scale."  (D.E. 8, p. 13).

On the morning of February 6, 2022, Plaintiff arrived at the McConnell Unit's Diabetic Clinic.  (D.E. 8, p. 5).  Per an agreement with his medical provider, Plaintiff was routinely scheduled for appointments at the Diabetic Clinic twice daily.  (*Id.*).  Plaintiff stated that he had been suffering with symptoms of low blood sugar throughout the previous night.  (*Id.*).  Plaintiff's symptoms that morning included palpitations, dizziness, and blurred vision.  (*Id.*).  According to Plaintiff, one of the purposes of the Diabetic Clinic is to check an inmate's blood sugar level.  (*Id.*).

Anciso, who apparently was assigned to the Diabetic Clinic on the morning of February 6, 2022, was informed that Plaintiff had not been scheduled for an insulin injection at that time.  (*Id.*).  Because Anciso believed Plaintiff "had no business being at the Diabetic [C]linic for any treatment," he ordered Plaintiff "out of the clinic due to false information."  (*Id.*).   While acknowledging he did not visit the Diabetic Clinic for an

insulin injection, Plaintiff alleges that "medical orders and common sense" supported him visiting the clinic to report diabetes-related symptoms. (*Id.* at 6).

According to Plaintiff, his medical doctor believed Plaintiff's diabetes condition to be serious enough to require treatment in the form of a glucose reading. (*Id.* at 9). Thus, Plaintiff alleges that Anciso interfered with him receiving a "blood glucose" reading to determine whether any further treatment was warranted (*Id.* at 7). Because he was denied treatment that morning by Anciso, Plaintiff suffered further complications of low blood sugar (hypoglycemia) consisting of palpitations, dizziness, and vision impairment for several hours on February 6. (*Id.* at 7-8). These conditions, while not life-threatening, had serious consequence for Plaintiff as they impaired his ability to work, read, write, or leave his cell for meals and activities. (*Id.* at 9).

In connection with the incident at the Diabetic Clinic, Plaintiff was charged in Disciplinary Case 20220100008 with being out of place. (D.E. 1-2, pp. 2-4). Plaintiff was convicted and of the charge and sanctioned to 60 days no commissary, 60 days no recreation, and a line class demotion. (D.E. 8, p. 2). Plaintiff appealed his conviction and sanction through Step 1 and Step 2 grievance appeals. (D.E. 1-2). Plaintiff's conviction was not overturned. (*Id.*).

Plaintiff does not contest the contest the disciplinary charge or conviction. (D.E. 8, pp. 2-3). Rather, Plaintiff claims that Anciso violated his Eighth Amendment rights by (1) interfering with his prescribed diabetes treatment through not allowing Plaintiff to receive a "blood glucose" reading; and (2) removing him from the clinic even though seating was

available in the clinic.  (*Id.* at 7-10).  Plaintiff further claims that Anciso violated his ADA/RA rights by: (1) failing to provide reasonable accommodations to allow Plaintiff to sit in the Diabetic Clinic until being seen or treated; and (2) denying him access to the clinic by reason of his disability.  (D.E. 1-1, p. 1; D.E. 8, p. 9).

Deputy Warden Nunez was the grievance official who considered Plaintiff's Step 1 grievance.  (D.E. 1-2, p. 2; D.E. 8, p. 10).  Plaintiff seeks to hold Nunez responsible for failing to conduct a minimal investigation into Plaintiff's complaints against Anciso.  (D.E. 8, p. 10).  Plaintiff claims that Nunez acted with deliberate indifference to Plaintiff's serious medical needs in his supervisory capacity with regard to his decision to affirm the disciplinary conviction.  (*Id.* at 10, 12).  Plaintiff also claims that Nunez, in his supervisory capacity, violated Plaintiff's ADA/RA rights though the discriminatory acts of Anciso.  (D.E. 1-1, p. 3).

Although not entirely clear, Plaintiff appears to allege that Capt. Sturgis presided over the disciplinary proceeding brought against Plaintiff following the February 6, 2022 incident.  (D.E. 8, p. 11).  Plaintiff seeks to hold Capt. Sturgis responsible for failing to conduct a minimal investigation into Plaintiff's complaints against Anciso.  Plaintiff claims that Sturgis acted with deliberate indifference to Plaintiff's serious medical needs in his supervisory capacity with regard to his role as the disciplinary hearing officer.  (*Id.* at 11-12).  Plaintiff also claims that Sturgis, in his supervisory capacity, violated Plaintiff's ADA/RA rights though Anciso's discriminatory acts.  (D.E. 1-1, p. 4).

Plaintiff seeks to hold Collier liable in his supervisory capacity under a theory of respondeat superior. (D.E. 8, p. 11). According to Plaintiff, Collier had a duty to create written policies or procedures which prevent constitutional violations. (*Id.*). Plaintiff also claims that Collier, in his supervisory capacity, violated Plaintiff's ADA/RA rights though Anciso's discriminatory acts. (D.E. 1-1, p. 3).

Lastly, Plaintiff claims that Anciso, Nunez, and Sturgis conspired against him by entering into an agreement to deprive him of his ADA/RA and constitutional rights, in violation of §§ 1983, 1985, and 1986. (D.E. 1-1, pp. 2-4).

## III.   LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to

present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

## IV.   DISCUSSION

### A.   Plaintiff's § 1983 Claims

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law

deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

### (1)   Eleventh Amendment Immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues Defendants in their official capacities for monetary damages, those § 1983 claims are barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed as barred by the Eleventh Amendment.

### *(2)   Eighth Amendment - Deliberate Indifference*

The Eighth Amendment prohibits cruel and unusual punishment.   U.S. Const. amend. VIII.   An Eighth Amendment violation occurs when a prison official acts with deliberate indifference to an inmate's health and safety.   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

"Deliberate indifference is "an extremely high standard to meet."   *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 754 (5th Cir. 2001).   In order to establish deliberate indifference:

> The prisoner must first prove objective exposure to a substantial risk of serious harm—in other words, the prisoner must prove a serious medical need. Second, the prisoner must prove the officials' subjective knowledge of this substantial risk. Third, the prisoner must prove that the officials, despite their actual knowledge of the substantial risk, denied or delayed the prisoner's medical treatment. Finally, the prisoner must prove that the delay in or denial of medical treatment resulted in substantial harm, such as suffering additional pain. Importantly, disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference.

*Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019) (citations and footnotes omitted). *See also Estate of Bonilla v. Orange Cnty., Texas*, 982 F.3d 298, 305 (5th Cir. 2020) ("To prove deliberate indifference, the Plaintiffs must show that the defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, that the defendants actually drew the inference, and that the defendants disregarded that risk by failing to take reasonable measures to abate it." (internal quotations and citations omitted).

Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). The prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted).

"An inmate displaying diabetic symptoms conveys a serious medical need, and a defendant's failure to respond to that need may constitute deliberate indifference." *Oakley v. Hudson*, No. 2:13-CV-102, 2013 WL 3561173, at *6 (S.D. Tex. Jul. 11, 2013) (citing *Gobert*, 463 F.3d at 345 n. 12). However, the Fifth Circuit has "consistently recognized … that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'" *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (quoting *Thompson*, 245 F.3d at 458-59). *See also Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021) ("Negligence or even gross negligence is not enough, the officials must have actual knowledge of the substantial risk"). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

**Officer Anciso**

Plaintiff claims that Anciso violated his Eighth Amendment rights by (1) interfering with his prescribed diabetes treatment through not allowing Plaintiff to receive a "blood glucose" reading; and (2) removing him from the clinic even though seating was available in the clinic. (D.E. 8, pp. 7-10). Plaintiff alleges that he is a diabetic and that, on the morning of his visit to the Diabetic Clinic, he was suffering from diabetic symptoms related to low blood sugar. (*Id.* at 5). Plaintiff's allegations, accepted as true, reflect that he potentially was exposed to a substantial risk of serious harm in connection with his diabetic symptoms.

Plaintiff, however, fails to allege sufficient facts to indicate that Anciso had actual knowledge of a substantial risk of serious harm to Plaintiff and then disregarded such by failing to take proper remedial measures. Plaintiff's allegations reflect that he was not visiting the Diabetic Clinic for his prescribed insulin injection and that his diabetic symptoms were not life threatening. (D.E. 8, pp. 6, 9). Plaintiff offers no specific facts to indicate that Anciso was aware of Plaintiff's agreement with his medical provider for him to appear at the Diabetic Clinic for any complaint in addition to receiving his twice-daily insulin injections. Plaintiff's allegations otherwise fail to suggest that his diabetic symptoms were readily apparent as a medical emergency to Anciso, who works as security officer without formal medical training. *See Trevino v. Hinz*, 751 F. App'x 551, 555 (5th Cir. 2018) ("[A]n officer's failure to immediately recognize ambiguous symptoms as a medical emergency does not amount to deliberate indifference."); *Rundles v. Arowosafe*,

11 / 24

No. 6:19-CV-00014, 2020 WL 7054239, at *4 (E.D. Tex. Aug. 20, 2020), *report and recommendation adopted* 2020 WL 5939051 (E.D. Tex. Oct. 7, 2020) (rejecting inmate's deliberate indifference claim because he did not allege that officer "had the medical training necessary to subjectively recognize inmate's symptoms -- feeling very ill, having a fast heartbeat, being overheated, and chest hurting – as a medical emergency).

The undersigned concludes, therefore, that Plaintiff cannot satisfy the subjective prong of the deliberate indifference test because he has not plead that Anciso had the actual knowledge to infer a serious risk of substantial harm to Plaintiff.  The fact Anciso should have perceived the risk from Plaintiff's complaints regarding his diabetic symptoms is insufficient "to satisfy the high bar of a deliberate indifference claim." *Rundles*, 2020 WL 7054239, at *4.  *See also Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) ("It is not enough to identify a significant risk that the official should have perceived but did not.") (internal quotations and citation omitted).

Even if Plaintiff could plead that Anciso had the requisite subjective knowledge to infer a substantial risk of harm, he has failed to allege facts sufficient to show that Anciso's actions in fact resulted in substantial harm.  Plaintiff's allegations reflect that his diabetic symptoms consisted of palpitations, dizziness, and blurred vision for several hours on February 6.  (D.E. 8, p. 5).  As noted above, Plaintiff acknowledged these symptoms were not life-threatening.  (*Id.* at 9).  He offers no specific facts to indicate that his symptoms worsened throughout the day on February 6, 2022 or that he otherwise suffered severe or long-lasting complications as a result of Anciso's conduct in interfering with Plaintiff's

treatment on that day for his diabetic symptoms.[2]   *See Guzman v. Cockrell*, No. 9:10CV111, 2012 WL 4017926, at *7 (E.D. Tex. Sep. 4, 2012) (holding that inmate's various allegations of diabetic symptoms -- major headaches, muscle cramps, sharp pains in feet and legs, stomach aches, and blurred vision --, resulting from a week-long delay in diabetes treatment fails to allege substantial harm); *Williams v. Browning*, No. V-03-157, 2006 WL 83433, at *1-3 (S.D. Tex. Jan. 11, 2006) (dismissing claim of diabetic inmate who failed to allege facts demonstrating substantial harm caused by the inability to obtain medications on time); *Sledge v. Dawson State Jail*, No. 3:03-CV-202, 2003 WL 21501821, at 2 (N.D. Tex. June 24, 2003), *recommendation adopted* 2003 WL 21751246 (N.D. Tex. July 28, 2003) (dismissing Eighth Amendment claim of diabetic inmate who failed to allege facts demonstrating substantial harm caused by a ten-day delay in receiving diabetes medication for his first ten days in jail).

In sum, Plaintiff has failed to satisfy all of the elements of a deliberate indifference claim regarding Anciso's actions on February 6, 2022 in interfering with Plaintiff's treatment for his diabetic symptoms.   Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claim against Anciso in his individual capacity be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

---

[2] Plaintiff alleges that he was placed in pre-hearing detention on or around February 6, 2022 and that security officials did not escort him to the Diabetic Clinic during his time in detention.  (D.E. 8, p. 7).  While claiming that he suffered from diabetic symptoms during his entire time in pre-hearing detention, Plaintiff alleges no facts to show Anciso denied Plaintiff access to the Diabetic Clinic during his time in detention other than the incident occurring on February 6, 2022.

### Nunez, Sturgis, and Collier

Plaintiff seeks to hold Nunez, Sturgis, and Collier liable in their various supervisory roles with respect to his deliberate indifference claims.   However, "without [an underlying] constitutional violation, there can be no supervisory liability."   *See Bage v. Galveston County*, No. 3:20-cv-00307, 2022 WL 3349152, at *10 (S.D. Tex. Aug. 12, 2022), *memorandum and recommendation adopted* 2022 WL 4125244 (S.D. Tex. Sep. 9, 2022) (citing *Estate of Henson v. Callahan*, 440 F. App'x 352, 357 (5th Cir. 2011).   *See also Gibbs v. King*, 779 F.2d 1040, 1046 n.6 (5th Cir. 1986) ("There is no supervisory liability without primary liability"); *May v. McClane*, No. 5:21-CV-271, 2022 WL 4353562, at *10 (N.D. Tex. Aug. 8, 2022) ("Without an underlying constitutional violation, [the plaintiff] fails to plead sufficient facts demonstrating  that Defendants instituted an unconstitutional policy").   Accordingly, the undersigned respectfully recommends that Plaintiff's Eighth Amendment claims against Nunez, Sturgis, and Collier in individual and supervisory capacities be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### *(3) Civil Conspiracy Claims*

To state a claim for conspiracy under § 1983, a plaintiff must allege that defendant "had 'an agreement to commit an illegal act which resulted in the plaintiff's injury.'"   *Hay v. City of Irving*, 893 F.2d 796, 799 (5th Cir. 1990) (quoting *Thomas v. City of New Orleans*, 687 F.2d 80, 83 (5th Cir. 1982)).   With regard to any claim that defendants have conspired under § 1983 to harm him, a plaintiff must plead specific, non-conclusory facts

that establish that there was an agreement among the defendants to violate his federal civil rights. *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004).  *See also Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987) (explaining that bald allegations that a conspiracy existed are insufficient and that plaintiffs asserting conspiracy claims under Section 1983 must plead the operative facts on which their claim is based); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992) (concluding that conclusory allegations of a conspiracy will not suffice).

Plaintiff claims that Anciso, Nunez, and Sturgis conspired against Plaintiff by entering into an agreement to deprive him of his ADA/RA and constitutional rights, in violation of §§ 1983, 1985, and 1986.  (Doc. 10, pp. 68-70.)  Plaintiff's allegations, however, consist of only conclusory allegations and his speculative belief that these defendants actually entered into an agreement to violate his rights.  *See Easter v. City of Dallas Probate Division*, No. 3:21-CV-0860, 2022 WL 2975349, at *8 (N.D. Tex. June 27, 2022), *recommendation adopted* 2022 WL 2972595 (N.D. Tex. July 27, 2022) (rejecting § 1983 conspiracy claim where allegations were "totally speculative and [did] not show an agreement of any kind between the two defendants").  Plaintiff's allegations of a conspiracy, therefore, are insufficient to state a § 1983 claim.

Plaintiff further has failed to state an actionable conspiracy claim under §§ 1985 and 1986.  Section 1986 of Title 42 "provides a cause of action for 'wrongs conspired to be done' as set forth in 42 U.S.C. § 1985."  *Davis v. Maginnis*, No. H-21-2278, 2021 WL 6340157, at *2 (S.D. Tex. Dec. 6, 2021).  To state a claim for the deprivation of civil rights

15 / 24

as set forth in § 1985(3), a complaint must allege the following: "(1) a conspiracy of two or more person; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 124 (5th Cir. 1996) (citation omitted). "Essential to the claim, however, is that the conspiracy be motivated by racial animus." *Id.* (citations omitted); *see also McCoy v. Homestead Studio Suites Hotels*, 177 F. App'x 442, 446 (5th Cir. 2006) (per curiam).

Plaintiff does not allege any specific facts suggesting a race-based conspiracy or animus against him.  Plaintiff, therefore, cannot state a valid claim for relief under § 1985(3). Because a valid § 1985 claim is a prerequisite to a § 1986 claim, that claim also fails. *See Davis, 2021 WL 6340157, at \*2 (S.D. Tex. Dec. 6, 2021) (citing Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000)).

Accordingly, the undersigned respectfully recommends that Plaintiff's conspiracy claims under §§ 1983, 1985, and 1986 against Anciso, Nunez, and Sturgis in their individual capacities be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### B. ADA/RA Claims

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, under the RA, "[n]o qualified individual with a disability . . . shall, solely by reason of her or his such disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.  29 U.S.C. § 794(a).

"The RA is operationally identical to the ADA in that both statutes prohibit discrimination against disabled persons; however, the ADA applies only to public entities while the RA applies to any federally funded programs or activities, whether public or private." *Borum v. Swisher County*, No. 2:14-CV-127-J, 2015 WL 327508, at *3 (N.D. Tex. Jan. 26, 2015) (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)).  Courts utilize the same standards in analyzing claims under both the ADA and RA.  *See Frame v. City of Arlington*, 657 F.3d 215, 223-24 (5th Cir. 2011).  The undersigned, therefore, will analyze Plaintiff's ADA/RA claims as though they were raised as a single claim.  *See Borum*, 2015 WL 327508, at *3.

To establish a valid ADA claim, a plaintiff must show that (1) he is a qualified individual with a disability within the meaning of the ADA; (2) he was excluded from participation or denied meaningful access to services, programs, and activities, or that he was otherwise discriminated against by defendants; and (3) such exclusion, denial of benefits, or discrimination is by reason of his disability.  *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997).

Under the ADA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004).  The Fifth Circuit has held that a prison's failure to satisfy the reasonable accommodation requirement may constitute a denial of services or benefits as well as intentional discrimination sufficient to satisfy the second and third prongs of the Title II ADA inquiry.  *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014).  "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015).

In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners. *See United States v. Georgia,* 546 U.S. 151, 160 (2006) (recognizing prisoner's allegations that defendant refused to provide a reasonable accommodation to a paraplegic inmate, "in such fundamentals as mobility, hygiene, medical care," resulted in the disabled inmate suffering serious punishment "without penal justification" and supported claims under the ADA and RA).

On the other hand, the ADA is not violated by "a prison's simply failing to attend to the medical needs of disabled prisoners." *Nottingham v. Richardson*, 499 F. App'x 368, 377 (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)); *see also Olmstead v.*

*L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not in this opinion hold that the ADA imposed on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.'").  Thus, the ADA does not cover "the mere absence or inadequacy of medical treatment for a prisoner."  *See Whetstone v. Hall*, No. 4:17cv158-JMV, 2018 WL 522778, at *2 (N.D. Miss. Jan. 23, 2018)).  Instead, Plaintiff must show he was treated differently because of his qualified disability. *Nottingham*, 499 F. App'x at 376.

### *(1) Individual Capacity*

A plaintiff cannot sue defendants in their individual capacities under either the ADA or RA.  *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *Nottingham*, 499 F. App'x at 376, n.6; *Roberts v. Cooper*, No. 6:22cv102, 2022 WL 2442798, at *4 (E.D. Tex. Apr. 29, 2022), *report and recommendation adopted* 2022 WL 2440776 (E.D. Tex. Jul 5, 2022); *Payne v. Sutterfield*, No. 2:18-CV-084, 2021 WL 3173902, at *3 (N.D. Tex. Jul. 27, 2021).  Accordingly, to the extent that Plaintiff sues Defendants in their individual capacities under the ADA/RA, the undersigned respectfully recommends that such claims be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### *(2) Official Capacity*

Liberally construed, Plaintiff brings his ADA/RA claims against Defendants in their official capacities.  The ADA does not "itself prohibit suits against both the State and its agencies."  *Patrick v. Martin*, No. 2:16-CV-216, 2018 WL 3966349, at *5 (N.D. Tex. Jun. 29, 2018), *recommendation adopted* 2018 WL 3956484 (N.D. Tex. Aug. 17, 2018) (citing

42 U.S.C. § 12131(1)(a)-(b)).  The Fifth Circuit further has held that state officers sued in their official capacities are proper defendants in suits brought under the ADA.  *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412-14 (5th Cir. 2004) ("Defendants have been sued in their official capacities and are therefore representing their respective state agencies ( which are proper Title II defendants) for all purposes except the Eleventh Amendment.").

"The definition of 'disability' is broad and accommodating—an impairment that 'substantially limits' a major life activity need only reduce the disabled person's ability to perform a major life activity as compared to the general population." *Peña Arita v. County of Starr, Texas*, No. 7:19-cv-00288, 2020 WL 5505929, at *4 (S.D. Tex. Sep. 11, 2020) (quoting *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590-91 (5th Cir. 2016)). Construing the pleadings liberally and accepting Plaintiff's allegations as true, the undersigned finds that Plaintiff sufficiently states he suffers from physical impairments associated with his diabetes that greatly limit his daily life activities and, at least for purposes of this screening, indicate he is a "qualified individual with a disability."

Plaintiff claims that Anciso violated his ADA/RA rights by: (1) failing to provide reasonable accommodations to allow Plaintiff to sit in the Diabetic Clinic until being seen or treated; and (2) denying him access to the clinic by reason of his disability.  (D.E. 1-1, p. 1; D.E. 8, p. 9).  With respect to his ADA/RA claims against Nunez, Sturgis, and Collier, Plaintiff sues them under a theory of *respondeat superior* for Anciso's discriminatory conduct.  (D.E. 8, pp. 11-12).

Plaintiff's allegations, accepted as true, fail to state an ADA/RA claim.  Regardless of how Plaintiff frames his ADA/RA claims, he essentially argues that he was denied his requested medical treatment for his diabetes condition.  Plaintiff provides no specific facts to show how Anciso's actions on February 6, 2022 were motivated by Plaintiff's disabilities.  Rather than suggest he has been excluded from medical treatment by reason of his disabilities, Plaintiff's complaints center on the denial of his requested medical treatment. *See Payne*, 2021 WL 3173902, at *2.  "[N]either the ADA nor RA covers the mere absence or inadequacy of medical treatment for a prisoner." *Id.* (citing *Bryant*, 84 F.3d at 249 and *Nottingham*, 499 F. App'x at 377).  *See also Hale v. Harrison Cnty. Bd. of Supervisors*, 8 F.4th 399, 404 n.† (5th Cir. 2021)) (explaining that "[t]he ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners) (citation omitted); *Whetstone*, 2018 WL 1022586, at *2 ("The ADA and RA exist to protect individuals from being discriminated against because they have disabilities; they do not exist to challenge a person's treatment for a disability.").

Accordingly, the undersigned recommends that Plaintiff's ADA/RA claims against Defendants in their official capacities be dismissed with prejudice as frivolous or for failure to state a claim upon which relief may be granted.

### C.  Claims Not Specifically Addressed in this Memorandum

To ensure justice and access to the courts, courts interpret pleadings of *pro se* litigants liberally.  *See United States v. Robinson*, 78 F.3d 172, 174 (5th Cir. 1996) (citing *United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983)).  *Pro se* actions will not be

dismissed based on technical pleading defects and should be construed to ensure such claims are given fair and meaningful consideration despite the unrepresented litigant's unfamiliarity with the law. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *See also Estelle v. Gamble*, 429 U.S. at 106 (*Pro se* parties are normally accorded more leniency in the construction of their pleadings).

The undersigned has liberally construed Plaintiff's original complaint and More Definite Statement to give his claims fair and meaningful consideration. The undersigned has attempted to articulate and analyze Plaintiff's claims in an impartial manner consistent with providing appropriate leniency to pro se litigants while at the same time requiring compliance with applicable pleading and screening standards. To the extent Plaintiff is attempting to raise a claim not specifically addressed by the undersigned in this Memorandum and Recommendation, Plaintiff has failed to state such claim with sufficient factual detail or clarity to allow the claim to be identified or analyzed by the Court.

As stated previously, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Again, Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Twombly*, 550 U.S. at 556. Further, the factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. Therefore, Plaintiff is advised that any claim not addressed in this Memorandum and Recommendation is not currently before this Court because Plaintiff has failed to allege sufficient facts or state such claims clearly.

## V.      RECOMMENDATION

For the reasons stated above and for purposes of § 1915A and §1915(e)(2), the undersigned respectfully recommends that: (1) Plaintiff's § 1983 claims for money damages against all **Defendants** in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; and (2) Plaintiff's Eighth Amendment  and ADA/RA claims against all **Defendants** in their respective individual and official capacities be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief pursuant to §§ 1915(e)(2)(B) and 1915A(b)(1).

The undersigned respectfully recommends further that the dismissal of this case count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be **INSTRUCTED** to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

Respectfully submitted on January 5, 2023.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).